# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| FLORENCE JOSEPH | CIVIL ACTION NO. 06-0201 |
|---|---|
| VS. | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability following a judgment of remand entered by this court.

Because the ALJ ignored this court's instructions on remand, and considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **REVERSED**.

### *Background*

Born on October 8, 1943, Florence Joseph ("Joseph") is a 63-year-old claimant with a ninth grade education. (Tr. 14). Joseph worked as a seamstress at Martin Mills for twenty-five years, until the plant closed in August of 1998. (Tr. 137, 237). Although Joseph underwent re-training provided by Martin Mills in order to find a job elsewhere, she had a heart attack in February of 1999. (Tr. 237, 129). Since that time, Joseph has continued to experience severe chest pain, shortness of breath, fatigue, headaches, occasional dizziness, swelling in the right leg due to deep vein thrombosis, and loss of memory. (Tr. 241).

Joseph filed an application for disability insurance benefits on July 2, 2002, alleging disability as of February 5, 1999 due to heart disease, diabetes, and high blood pressure.[1] The

---

[1] Tr. 40-42.

application was denied initially and on reconsideration. Following an administrative hearing on July 10, 2003, ALJ E. Wilson Crump II determined that Joseph could perform her past work as a seamstress, and therefore, was not disabled. (Tr. 20). Joseph appealed the decision to the Appeals Council, which denied her request for review.

On January 23, 2004, Joseph filed a complaint in this court alleging that the ALJ erred in assessing her residual functional capacity, and in failing to obtain vocational expert testimony.[2] In a report dated January 12, 2005, the undersigned made the following findings of fact: (1) The ALJ erred in failing to re-contact Joseph's medical sources in order to obtain information regarding her residual functional capacity; (2) the ALJ erred in discounting Joseph's complaints of pain that limited her ability to perform the full range of light work; and (3) the ALJ erred in finding that Joseph could perform her past work as a seamstress.[3] Accordingly, the undersigned recommended that the case be remanded to the administrative level, with the following instructions:

> In this case, the record is insufficient to make a definitive ruling on the issue of disability. Accordingly, it is recommended that the Commissioner's decision be **REVERSED** and that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). *This includes, but is not limited to, sending the case to the hearing level with instructions to the ALJ to re-contact Joseph's medical sources in order to obtain additional information regarding the specific tasks which Joseph retains the capacity to perform and calling a vocational expert to address what jobs, if any, Joseph can perform considering her limitations. Joseph should be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.*[4]

---

[2] See Joseph v. Commissioner of Social Security, Civil Action No. 04-0306, W.D. La.

[3] Joseph v. Commissioner, Civil Action No. 04–0306, Rec. Doc. 8.

[4] Id. (emphasis added).

Adopting the reasoning of the undersigned, the district judge issued a final judgment in this case on June 2, 2005, remanding this case to the administrative level with instructions to undertake the recommended actions.[5]

On November 2, 2005, a remand hearing was held before ALJ Lawrence F. Ragona. (Tr. 232-45). Despite the court's remand instructions, the ALJ did not call an expert witness to testify, nor did the ALJ re-contact any of Joseph's medical sources for the purpose of assessing her residual functional capacity. Rather, on November 30, 2005, the ALJ issued an unfavorable decision finding, once again, that Joseph is capable of performing light work activity and can return to her past work as a seamstress. (Tr. 164). Moreover, the ALJ based his decision largely upon the same medical evidence that the court had already concluded did not substantially support ALJ Crump's conclusions.

On February 6, 2006, Joseph filed the instant complaint in this court.

### *Assignment of Errors*

Joseph raises one error on appeal, namely, that the ALJ committed an error of law in failing to comply with this court's remand order.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might

---

[5] Joseph v. Commissioner, Civil Action No. 04-0306, Rec. Doc. 9.

accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

*Analysis*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, ALJ Ragona determined at Step 4 that, despite suffering from the severe impairments of mitral regurgitation, coronary artery disease, hypertension, and diabetes, Joseph can perform light work and can return to her past work as a seamstress. (Tr. 165). After a

review of the entire record and the briefs of the parties, and pursuant to 42 U.S.C. §405(g), the undersigned concludes that the ALJ's findings and conclusions are not supported by substantial evidence in the record.

**1.** **<u>Medical History</u>**

On February 5, 1999, Joseph went to the emergency room at Dauterive Hospital, complaining of intermittent chest pain lasting three days. (Tr. 86-87). Joseph was transferred to Our Lady of Lourdes, where she was diagnosed with myocardial infarction, and underwent a left cardiac catheterization and stenting of her circumflex. (Tr. 104). Joseph was discharged from the hospital after four days, with a diagnoses of coronary artery disease. (Tr. 105).

On February 23, 1999, Joseph was seen at the Cardiovascular Institute of the South, complaining of right leg swelling and warmth, which was diagnosed as deep vein thrombosis. Joseph was prescribed Coumadin to control the thrombosis. (Tr. 101). On March 4, 1999 chest x-rays showed pulmonary edema with bilateral small effusions. (Tr. 81). An echocardiogram indicated congestive heart failure likely secondary to hypertension and mitral regurgitation. (Tr. 82). Joseph was examined at the Cardiovascular Institute of the South eight more times before December, 2000, complaining of both shortness of breath with walking short distances and swelling. She was prescribed medication to attempt to keep control of her heart condition and diabetes. (Tr. 89-96).

On May 14, 2002, Joseph began treatment at University Medical Center. On August 22, 2002, an echocardiographic report showed normal dimensions of Joseph's ventricles, valves, and atriums. (Tr. 126). In Progress Notes from UMC dated May 12, 2003, Joseph reported shortness

of breath, and it was noted that her hypertension was not controlled, however, her diabetes was controlled with medication. (Tr. 116).

Updated medical information from UMC dated August 12, 2002 through February 28, 2005 shows continued hospital visits and treatment for a variety of complaints, including headaches, blurred vision, and continued high glucose levels. The records also show that Joseph suffers from "bilateral trace edema in legs." (Tr. 192-231).

## II.     Procedural History of Case

Joseph contends that the ALJ committed an error of law when he failed to comply with this court's remand order. In order to present a clear picture of the allegation of error in this case, it is necessary to present the specific findings that were made by this court on January 12, 2005, the specific instructions of this court that were included in the remand order, and the actual actions taken by ALJ Ragona on remand.

### Specific Findings in Court's First Decision

In the first report and recommendation, the undersigned noted that, despite the ALJ's finding that Joseph can do light work, and thus can return to her work as a seamstress, the record lacked sufficient information to actually determine Joseph's residual functional capacity. The undersigned concluded that the ALJ had ignored the dearth of information in the record concerning Joseph's ability to perform work-related tasks. Although Joseph has well-documented heart problems which cause her to have shortness of breath and swelling, there was no stress test or other evidence supporting the ALJ's conclusion that Joseph can perform work without implicating her potentially life-threatening health problems. Noting that Title 20 C.F.R. §404.1512(e) requires the ALJ to re-contact medical sources when their opinions do not provide

sufficient information for the ALJ to determine disability status, the undersigned recommended remand for this purpose.

The undersigned also concluded that ALJ Crump erred in discounting Joseph's allegations that minimal exertion causes chest pain, shortness of breath and swelling, all of which directly implicate her ability to perform the full range of light work on a sustained and regular basis. The undersigned concluded that the medical evidence in the record clearly supports a finding that Joseph has a heart condition that would cause the type of pain that she alleged.

Finally, the undersigned concluded that ALJ Crump erred in finding that Joseph's work as a seamstress fell into the light work category. The ALJ stated:

> The evidence in this case establishes that the claimant has past relevant work as a seamstress in a sewing factory. She testified that this work involved sitting and constant use of her arms and legs lifting and carrying bundles of briefs, five to six bundles at a time very ten to fifteen minutes. In written statements she reported that she frequently lifted less than ten pounds and the heaviest weight lifted was also less than ten pounds. She also reported that this work involved sitting six hours, walking one hour, and standing one hour.

(Tr. 19).

At her first hearing, Joseph testified, however, that her duties as a seamstress included carrying *several bundles of fabric at a time*, with each bundle probably weighing less than 10 pounds. Joseph explained that the reason she had to carry as many bundles as she could hold was so that she could improve her production totals for the day, i.e., the fewer trips she made to retrieve fabric, the longer she could be sewing. Joseph estimated that she carried several bundles every 10 to 15 minutes. (Tr. 149). When she was sitting and working, her arms and legs were constantly in motion with fabric being pulled and the foot pedal being operated. (Tr. 150). Thus, Joseph's testimony was clear that she seldom carried only 10 pounds. Rather, she would

carry over 50 pounds every 10-15 minutes. Noting that ALJ Crump did not call a vocational expert to address how the occupation of seamstress is generally performed and how Joseph would go about performing the work considering her impairments, the undersigned concluded that the ALJ's determination that Joseph could perform her past relevant work as a seamstress was not supported by substantial evidence.

### **ALJ's Actions on Remand**

On remand, despite specific instructions to do so, ALJ Ragona did not call a vocational expert to testify regarding Joseph's past work as a seamstress. Furthermore, the ALJ did not re-contact any of Joseph's doctors for the purpose of gathering additional information about her RFC. Rather, ALJ Ragona simply summarized the medical evidence that was before ALJ Crump and made the same conclusory findings that ALJ Crump had made.

Specifically, ALJ Ragona concluded that "the objective medical evidence in this case does not document a severity of symptoms which would be expected to preclude light work activity.....Accordingly, the undersigned finds the claimant retains the residual functional capacity to lift and carry ten pounds frequently and twenty pounds occasionally, stand and walk six hours in a workday and sit six hours in a workday." (Tr. 164). Of particular note is the fact that ALJ Ragona continued to find Joseph only partially credible and failed to offer any additional evidence to support his finding that Joseph can return to her past work as a seamstress, completely ignoring the undersigned's finding that Joseph cannot return to her past work as a seamstress ***as that job was performed by her.***

### III.     Mandate of the Case

In <u>Sullivan v. Hudson</u>, 490 U.S. 877, 885-86, 109 S.Ct. 2248,2254-55 (U.S. 1989), the Supreme Court set forth the consequences for failure to follow a court's remand instructions in the context of a social security appeal, to wit:

> Where a court finds that the Secretary has committed a legal or factual error in evaluating a particular claim, the district court's remand order will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed. <u>See, e.g.</u>, <u>Cooper v. Bowen</u>, 815 F.2d 557, 561 (C.A.9, 1987). Often, complex legal issues are involved, including classification of the claimant's alleged disability or his or her prior work experience within the Secretary's guidelines or "grids" used for determining claimant disability. <u>See, e.g.</u>, <u>Cole v. Secretary of Health and Human Services</u>, 820 F.2d 768, 772-773 (C.A.6, 1987). ***Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review***. <u>See, e.g.</u>, <u>Hooper v. Heckler</u>, 752 F.2d 83, 88 (C.A.4, 1985); <u>Mefford v. Gardner</u>, 383 F.2d 748, 758-759 (C.A.6, 1967).

(emphasis added).

The Fifth Circuit has defined what has become known as the "mandate rule" as follows:

> A corollary of the law of case doctrine, known as the mandate rule, provides that a lower court ***on remand must "implement both the letter and the spirit of the [appellate court's] mandate," and may not disregard the "explicit directives" of that court.*** See <u>Johnson v. Uncle Ben's, Inc.</u>, 965 F.2d 1363, 1370 (5th Cir.1992). "The mandate rule simply embodies the proposition that 'a district court is not free to deviate from the appellate court's mandate.' " <u>Barber v. International Bhd. of Boilermakers</u>, 841 F.2d 1067, 1070 (11th Cir.1988) (quoting <u>Wheeler v. City of Pleasant Grove</u>, 746 F.2d 1437, 1440 n. 2 (11th Cir.1984)); see also <u>Harris v. Sentry Title Co.</u>, 806 F.2d 1278, 1279 (5th Cir.1987) ("It cannot be disputed that 'when the further proceedings [in the trial court] are specified in the mandate [of the Court of Appeals], the district court is limited to holding such as are directed.'") (alterations in original) (quoting 1B moore's Federal Practice ¶0.404(10), at 172 (1984)); <u>Newball v. Offshore Logistics Int'l</u>, 803 F.2d 821, 826 (5th Cir.1986) (holding that "a mandate controls on all matters within its scope").

<u>United States v. Becerra</u>, 155 F.3d 740, 753 (5th Cir. 1998) (emphasis added).

Although the court is unable to locate any cases in which the Fifth Circuit has applied the "law of the case" doctrine and/or the "mandate rule" to social security cases, other district courts have done so. See, e.g., Ischay v. Barnhart, 383 F.Supp.2d 1199 (C.D. Cal. 2005) (finding that the ALJ violated law of the case and exceeded scope of remand order by abandoning residual functional capacity assessment he had made in his second decision and awarding immediate benefits); Key v. Sullivan, 925 F.2d 1056, 1062 (7th Cir.1991)(concluding that the ALJ exceeded the scope of his remand order and violated the law of the case by reassessing the claimant's past relevant work or residual functional capacity, when the court's remand instructions only instructed "the Secretary to make a finding as to the physical and mental demands of the assembler job in relation to [the claimant's] present capabilities"); Hooper v. Heckler, 752 F.2d 83, 87-88 (4th Cir.1985)(finding that the ALJ violated the rule of mandate by re-litigating an issue decided by the district court); Mefford v. Gardner, 383 F.2d 748, 756 (6th Cir.1967)(same); Williams v. Apfel, 65 F.Supp.2d 1223, 1229 (N.D.Okla.1999); Latulippe v. Commr., SSA, No. 95-82-SD, 1996 WL 360363, at *6 (D.N.H. March 7, 1996).

In the instant case, the ALJ did not re-contact Joseph's treating sources, nor did he call on a vocational expert at the remand hearing. Rather, ALJ Ragona simply re-asserted the same findings that were originally made by ALJ Crump. What is particularly troubling is that ALJ Ragona based his findings on the same evidence upon which ALJ Crump made his findings, and which this court explicitly found was not supportive of a conclusion of non-disability.

Considering the foregoing, the undersigned concludes that the ALJ committed an error of law in failing to comply with this court's orders on remand. Because ALJ Ragona's conclusions

are not supported by substantial evidence, the undersigned concludes that Joseph is entitled to benefits.

*Conclusion*

Considering the foregoing, it is recommended that the decision of the ALJ be **REVERSED** and that Joseph be awarded benefits consistent with an onset date of February 5, 1999.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on February 1, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)